**64 P.(2d) 92**

### NIXON–FOSTER SERVICE CO. v. MORROW.

No. 4233.

Supreme Court of New Mexico.

Dec. 21, 1936.

Rehearing Denied Jan. 22, 1937.

Robert A. Morrow and H. M. Rodrick, both of Raton, for appellant.

H. A. Kiker, of Santa Fé, for appellee.

HUDSPETH, Justice.

This is a suit on a promissory note. The defense is partial failure of consideration. Defendant's amended answer states:

"That the consideration of said note was as follows: (A) That the defendant herein had purchased from the copartnership of Nixon-Foster Service Company a certain electric refrigerator for $301.00 and a certain light plant and equipment, consisting of a generator and batteries, for the sum of $587.00, and that at the time of said purchase it was represented to defendant, and defendant was led to believe, by Nixon-Foster Service Company, acting by and through their representatives, and in conjunction with the agent of the Delco Light Company, that said light plant and electric refrigerator and equipment were protected by insurance, and that it was represented that the purchase price of said electric refrigerator, light plant and equipment, included all carrying charges, insurance, and all costs and things to be done and paid by this defendant.

"2. That defendant relied upon said representation as he then and there had a right to do, and that said representation caused him not to procure fire insurance on said property. That thereafter said electric refrigerator, light plant and equipment were completely destroyed by fire and were a total loss to this defendant, the same not being insured at the time of loss.

"3. That at the time of such loss there was an unpaid balance of $273.50 on the electric refrigerator, and $446.40 on the light plant and equipment, and that this defendant refused to pay any of said balances because of the misrepresentations of the said Nixon-Foster Service Company as to said property being insured."

The amended answer further states that after altercations and negotiations the parties arrived at a compromise agreement for the settlement of the matter; that the plaintiff agreed to deduct $50 from the balance due on the refrigerator and to furnish another light plant as good as the one destroyed by fire; that pursuant to said agreement plaintiff installed a light plant, which it warranted as to quality, whereupon defendant executed the note sued upon and paid the balance due plaintiff in cash; that the second light plant proved to be old and badly worn, and not of the quality represented, and defendant tendered back the plant to plaintiff and demanded credit on the note for the price thereof, $446. The reply was a general de-

nial of the new matter in the amended answer.

The plaintiff proved that no part of the note had been paid and rested. The defendant tendered evidence which tended to prove the first contract, the dispute over the indebtedness, the compromise agreement with reference thereto, the installation of the second light plant, and the failure of the second light plant to meet the specifications of the compromise agreement. Much of this tendered evidence was excluded. From the judgment rendered for the plaintiff upon an instructed verdict, this appeal is prosecuted. The parties will be referred to as plaintiff and defendant.

■ Defendant tendered the written orders for the refrigerator and light plant and the conditional sales contract covering these items. Upon objection being made that copies thereof were not attached to the amended answer, they were excluded. 1929 Comp. § 105-522 provides that when an instrument in writing ·is the foundation of an action or defense, a copy must be filed with the pleading, and in case of failure to so file a copy, such instrument cannot be received in evidence. Sections 1, 2, and 3 of the amended answer quoted above, and particularly the statement that defendant had purchased an electric refrigerator and light plant following the first line of section one "that the consideration of said note was as follows," justified the ruling. It appears from the whole pleading that the defense was partial failure of considera-tion of the note sued upon which was executed as part of the compromise agreement. Clearly, the documents tendered were not the foundation of this defense. "No contract * * * need or should be filed * * * which is not the foundation of the action or defense." Beebe v. Fouse, 27 N.M. 194, 199 P. 364; Laws v. Pyeatt, 40 N.M. 7, 52 P.(2d) 127; Daughtry v. B. F. Collins Inv. Co., 28 N.M. 151, 207 P. 575; Weggs v. Kreugel, 28 N.M. 24, 205 P. 730; Lohman v. Reymond, 18 N.M. 225, 137 P. 375.

■ Both parties agree that it was necessary to prove enough of the facts relating to the former transaction out of which the dispute grew to disclose the basis for a compromise agreement. The courts are liberal in receiving evidence of the circumstances leading up to and surrounding the transaction constituting an alleged settlement. Frank v. Heaton, 56 Ill.App. 227; Mead v. White, 8 A. 913, 6 Sad.(Pa.) 38; McLendon .v. Wilson, 57 Ga. 438; City Elec. R. Co. v. Floyd County, 115 Ga. 655, 42 S.E. 45; Duflo v. Juif, 63 Mich. 513, 30 N.W. 105.

In the last case cited the Supreme Court of Michigan held: "Where, in an action on a promissory note, defendant pleads that it was without consideration, as given for an alleged balance of old transactions, which included two notes actually paid in a settlement, in which a farm was deeded to plaintiff in full liquidation of all debts, leaving a balance· coming to defendant of any excess

obtained on sale, it is competent for defendant to introduce the deed in evidence, not as conclusive proof of the consideration for the farm, but as an *element of the settlement* relied upon in determining the question whether the notes which were the *consideration of the note sued on* were included in the settlement made when the deed was given." (Italics ours.)

12 C.J. p. 366, § 80, states:

"On the issue of good faith in making the settlement, evidence of collateral facts relevant to such issue may be admitted.

"Documentary evidence. Documentary evidence that is relevant to any issue in the case is admissible under the same conditions that such evidence is admitted in other cases."

"Where the question at issue is as to whether or not a settlement was had between the parties, evidence of all the matters comprised in and of the circumstances leading up to and surrounding the transaction constituting the alleged settlement is admissible." 3 Encyc. of Evi. p. 251.

The learned trial court ruled and appellee maintains, that the defendant could not prove by oral evidence that there was a dispute—that the allegation of the specific elements of the fraud relied upon, i. e., representation that the chattels sold were protected by insurance, confines the defendant to the written contract by the terms of which the purchaser expressly assumes responsibility for the insurance.

Plaintiff's able counsel says: "Without showing his original contract, under the issues tendered by him, he could not show a dispute. Without a dispute he could not show a compromise."

The Supreme Court of Iowa in the case of Jacobsen v. Moss, 268 N.W. 162, 164, lately commented upon the rule which plaintiff maintains is applicable to this case, as follows:

"Under the written lease there was no dispute about the amount of the rent agreed to be paid, and under the evidence there was no dispute as to the amount of cash which had been paid. All allegations with reference to the previous oral agreement for a lesser amount were properly stricken by the court. Defendant's plea of accord and satisfaction cannot be sustained as against count 2 for the rent due under the written lease for the year 1932, for the reason that under the written lease there was no dispute as to the amount due and no dispute as to the amount that had been paid upon the rent under the terms of the written lease. The plea of accord and satisfaction can only apply where there is a settlement of a disputed claim. Unless the defendant was entitled to introduce evidence of his alleged oral contract in contradiction of the written contract, there was no disputed amount in controversy. Before there would be any dispute as to the amount due, there would have to be proof of the alleged oral agreement, and no competent proof was possible under the parol evidence rule. There could be no good-faith dispute as to the rent of 1932. There is no claim that there is any ambiguity in

the terms of the written lease. The dispute only arises under the claimed oral agreement between the plaintiff and the defendant, which the court properly held could not be proven, and the exclusion of this testimony and the striking of the allegations of the petition in reference to such matters eliminated the dispute and hence the court was justified in striking the allegations in reference to accord and satisfaction as to the balance of the rent due for the year 1932. 'Without an honest dispute an agreement to take a lesser amount in payment of a liquidated claim is without consideration and void.' 1 C.J. p. 554; Walston v. F. D. Calkins Company, 119 Iowa, 150, 93 N.W. 49; Rauen v. Prudential Insurance Co., 129 Iowa, 725, at page 740, 106 N.W. 198.

"There is no claim by defendant that the $65 item of indebtedness which was owing to him by Vander Striek and which Vander Striek paid to plaintiff on a written order directed to Vander Striek, and which contained this statement, 'And it is agreed and understood by and between Mr. Jacobsen and myself that this amount of $65.00 is accepted as balance in full of back rent due Asmus Jacobsen, and charge the same to my account,' fully paid the balance due under the terms of the written lease. The court permitted the plea of accord and satisfaction to stand as to count 1, which was based solely upon an oral agreement. There was no error in striking the allegations of the answer with reference to plea of accord and satisfaction as applied to the second count of plaintiff's petition."

The question is whether this sound rule is applicable in the case at bar. The facts are different. This suit is on a note which, it is alleged, is the fruit of the compromise agreement. It has been held that where a compromise agreement has been breached by what, in effect, is a failure or refusal to perform, the other party may elect to regard the compromise as rescinded and proceed on the original cause of action. Pacheco v. Delgardo (Ariz.) 52 P.(2d) 479, 103 A.L.R. 494. But the plaintiff did not choose to pursue that course. Plaintiff points out that the amount in dispute is the same as the balance due on the first light plant, $446, and argues that, "if the defendant did no more at the time he executed the note than he was already legally bound to do, then there was no consideration moving from him to appellee for the alleged new agreement." If there was a valid compromise agreement, further controversy in regard to the first agreement is ended.

The main point of attack is upon the good faith of defendant in maintaining the dispute over the first contract. The surrender or discharge of a claim which is entirely without foundation, and known to be so, is not a good consideration. The pivot is the bona fides of the claimant or disputant.

"The settlement of a bona fide dispute or a doubtful claim, if made fairly and in

good faith, is sufficient consideration for a compromise based thereon." 12 C.J. p. 324; Union Bank v. Geary, 5 Pet. 99, 8 L.Ed. 60; McKinley v. Watkins, 13 Ill. 140; Sweitzer v. Heasley, 13 Ind.App. 567, 41 N.E. 1064; Keefe v. Vogle, 36 Iowa, 87.

The language of Judge Harlan in Hennessy v. Bacon, 137 U.S. 78, 11 S.Ct. 17, 19, 34 L.Ed. 605, seems to describe the situation of the parties in this case: "It is the case of the compromise of a disputed claim, the parties dealing with each other upon terms of perfect equality, holding no relations of trust or confidence to each other, and each having knowledge, or having the opportunity to acquire knowledge, of every fact bearing upon the question of the validity of their respective claims."

The trend of modern decisions is toward a liberal construction of compromise agreements. The case of Frazier v. Ray, 29 N.M. 121, 219 P. 492, 495, is cited in 1 C. J.S., Accord and Satisfaction, p. 546, § 42, in support of the following rule: "Where an accord and satisfaction was entered into without fraud, duress, or mutual mistake, the courts will not go behind it and reopen the controversy which preceded it." And the language of Mr. Justice Bratton, who wrote the opinion of the court, is quoted in a note as follows: "This must necessarily be the true rule, because in every controversy one of the parties must be right and the other wrong, and if the court, in such cases, goes behind their accord and satisfaction and determines which of them was in fact right and renders judgment accordingly, their settlement would become futile and a mere idle ceremony." See, also, Wooley v. Shell Petroleum Corp., 39 N. M. 256, 45 P.(2d) 927; McKee v. Woods, 35 N.M. 168, 291 P. 292; Bennett v. Bennett, 219 Cal. 153, 25 P.(2d) 426; Rosencrantz v. Mason, 85 Ill. 262; Adams v. Crown Coal & Tow Co., 198 Ill. 445, 65 N. E. 97; O'Brien v. City of New York, 25 Misc. 219, 55 N.Y.S. 50; Marshall v. Larkin, 82 Mo.App. 635; 5 R.C.L. 882, § 7; Reed v. Kansas Postal Tel. & Cable Co., 125 Kan. 603, 264 P. 1065, 57 A.L.R. 275; Bowers Hydraulic Dredging Co. v. Hess, 71 N.J.Law, 327, 60 A. 362; Harrington v. Mutual Benefit Health & Accident Ass'n (Vt.) 182 A. 179; Shrader v. McDaniel, 106 Kan. 755, 189 P. 954; Gottlieb v. Scribner's Sons, 232 Ala. 33, 166 So. 685.

In the case of Root Refining Co. v. Brooks (Ark.) 90 S.W.(2d) 221, 223, the court said: "The letter of March 29, 1928, set out above, lacks but little, if anything, of being a novation. A new lease was executed and new terms of payment provided. If this writing expressed the new agreement as it purported to do, it is apparent that an additional payment of only $10,000 was provided for. * * * There was no mistake. Ezzell had the option of accepting the check as tendered or of returning it. He did not return nor has he tendered the return of the proceeds of the check or of any of the other twenty-five payments. He made his election and is bound by it."

Furthermore, the plaintiff released the original sales contract and installed the second light plant. Some of the cases make a distinction where the compromise agreement has been partially performed. It tends to show that the plaintiff thought the defendant's claim had merit.

The insurance clause in the first contract reads as follows: "Purchaser shall keep said property insured against loss by fire to properly protect all interests therein, and on failure to do so seller may procure said insurance. Purchaser agrees to pay premium on demand and that on failure to do so payment of same shall be secured by this contract. The proceeds of any insurance, whether paid by reason of loss, injury, return premium, or otherwise, shall be applied toward the replacement of the property or payment of this obligation at the option of the seller."

A part of the tender reads as follows: "* * * that H. R. Foster, one of the partners of Nixon and Foster, a copartnership, the payee named in the note herein sued on, in the presence of C. S. Lilley, while attempting to sell the defendant the original light plant and Frigidaire, at the home of the defendant in or near Folsom, New Mexico, on the 6th day of May, 1929, after discussing the matter of said sale for some time with the defendant and while he had the defendant's Exhibit 1 and defendant's Exhibit 2 before him, preparatory to having them signed, made this statement in answer to the defendant's question 'How much is all of this going to cost me, includ-

ing everything that I have to do under the contract?' That C. S. Lilley, in the presence of H. R. Foster, replied 'Eight Hundred Eighty Eight Dollars.' That, after doing some figuring, he said 'Eight Hundred Eighty Eight Dollars.' That the defendant then asked the question of H. R. Foster and C. S. Lilley 'Now, does that include everything that I have got to pay, carrying charges and everything else?' That C. S. Lilley replied 'That includes everything that you have to pay for under the contract.' That the defendant then said 'All right, I will take them,' and signed the agreement herein, the exhibits of the defendant, defendant's Exhibits 1 and 2."

Defendant's Exhibit 8, a letter from Delco-Light Company to plaintiff, in part, is as follows:

"We have before us your letter of January 2nd, in which you request information in regard to the James Morrow plant that has recently been burned.

"* * * It was for a time the policy of the Delco-Light Company to carry a blanket policy on equipment sold under the GMAC plan but this has for some time been discontinued * * *."

The evidence on all other points was sufficient and there is room for dispute, apparently, as to whether the first written contract actually embodied the contract made by the parties. The letter in the record, which states that previously it was the practice of the plaintiff's principal to carry blanket insurance on these plants,

lends support to the allegation that the salesman represented that the moneys paid covered the insurance premiums.

It is not necessary for us to pass upon the question as to whether this evidence should be excluded under the oral evidence rule in a suit based upon the original contract, since the plaintiff is not suing on that contract.

The question to be determined, assuming that the plaintiff is in position to question the validity of the compromise agreement, is as to the good faith of the defendant in disputing the account of plaintiff. The oral evidence rule aside, the defendant might reply in the language of the court, Ry. Co. v. Kisch, L.R. 2 H.L. 120, quoted in Poe v. Texas & Pac. Ry. Co. (Tex.Civ. App.). 95 S.W.(2d) 505, 508, as follows: "When once it is established that there has been any fraudulent misrepresentation, * * * by which a person has been induced to enter into a contract, it is no answer to his claim to be relieved from it to tell him that he might have known the truth by proper inquiry. He has a right to retort upon his objector: "'You, at least, who have stated what is untrue, * * * for the purpose of driving me into a contract, cannot accuse me of want of caution because I relied implicitly upon your fairness and honesty.'" The evidence was sufficient to take the case to the jury.

It is stated in 12 C.J. 364:

"The execution and delivery of a bill or note is prima facie evidence of the settlement of all existing demand between the parties up to date. * * *

"A settlement being once shown every presumption is indulged in favor of its fairness and correctness; and the burden of proving mistake, fraud, duress or other facts relied on in avoidance of a compromise and settlement is on the party seeking to avoid the settlement."

And it is further stated in the same volume, at page 367: "Where a compromise is alleged, the determination of all controverted questions of fact is for the jury. Thus on conflicting evidence it is for the jury to determine whether there was an agreement of compromise * * * whether there was a consideration, whether there was such an honest dispute between the parties as could be made the basis of a compromise * * * whether the party relying on the compromise has performed conditions imposed on him, and the damage suffered from the breach, if any."

We believe that the court erred in excluding the evidence tendered and taking the case from the jury. Other questions are argued, but they are not likely to arise upon a second trial; hence they have not been considered.

For the reasons stated, the judgment should be reversed, the cause remanded, with directions to grant the defendant a new trial, and it is so ordered.

SADLER, C. J., and BICKLEY, BRICE, and ZINN, JJ., concur.